IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHEN ARNOLD MOORE,

    Petitioner,               No. 2: 10-cv-1314 KJM CKD P

  vs.

M. McDONALD, Warden,

    Respondent.          ORDER, FINDINGS AND RECOMMENDATIONS

                             /

## I. INTRODUCTION

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner pleaded guilty to hit and run causing injury and driving under the influence causing injury.  Petitioner also admitted he had previously been convicted of two prior "strike" convictions within the meaning of California's "Three Strikes" law.  See CAL. PENAL CODE § 1170.12.  Petitioner received a sentence of twenty-seven years to life imprisonment.  Petitioner raises two claims in this federal habeas petition; specifically:  (1) the trial court should have dismissed one or both of his prior strikes ("Claim I"); and (2) his sentence of twenty-seven years to life imprisonment constitutes cruel and unusual punishment under the Eighth Amendment to the Constitution ("Claim II").  For the following reasons, the

habeas petition should be denied.

## II.  FACTUAL BACKGROUND[1]

> After consuming four beers and two drinks containing vodka, and without a valid driver's license, defendant agreed to drive his girlfriend's son to a friend's house off of Lake Boulevard in Redding. As they reached the downtown area, defendant accelerated the vehicle to a high rate of speed, ignoring his passenger's requests to slow down. Defendant ran a red light at the intersection of Pine Street and Shasta Street and smashed into a vehicle that was legally entering the intersection. The driver of the impacted vehicle was David Doty. Doty suffered two broken fingers on his left hand, numerous deep-tissue bruises on the left side of his body, and a bone spur was broke loose from his spinal column near his neck. Doty's sons, Daniel and Joel, were passengers during the collision. Daniel suffered numerous facial fractures and severe bruising to the left side of his body and face. Joel was not seriously injured.
>
> Following the accident, defendant left the vehicle and ran northbound on Pine Street. Defendant's passenger, Randall Long, remained at the scene of the accident until police arrived. Long told officers of the Redding Police Department the accident occurred because defendant ran a red light, he had been drinking, and he took off on foot immediately following the accident. While officers were at the scene, defendant's girlfriend called police dispatch to report the vehicle stolen. She said she last saw defendant chasing after the vehicle on foot as the unidentified car thief drove off. Roughly two hours later, police made contact with defendant, who also said the vehicle was stolen. Defendant denied involvement in the accident even after being informed Long positively identified him as the driver. Defendant was arrested. A blood-alcohol test, administered roughly three and a half hours after the accident, established defendant's blood-alcohol level was .11 percent.

(Resp't's Am. Answer Ex. A at p. 2-3.)

## III.  PROCEDURAL HISTORY

Petitioner appealed the judgment to the California Court of Appeal. In that appeal, he asserted that the trial court abused its discretion when it refused to dismiss one or both

---

[1] The factual background is taken from the Court of Appeal of the State of California, Third Appellate District opinion dated April 13, 2009 and filed by Respondent in this court as Exhibit A to his amended answer.

2

of the strikes against petitioner.  On April 13, 2009, the Court of Appeal affirmed the judgment.  Thereafter, petitioner filed a petition for review in the California Supreme Court.  Petitioner raised the issue he previously raised in the Court of Appeal as well as argued that his sentence constituted cruel and unusual punishment.  The California Supreme Court issued a summary denial of the petition for review on June 24, 2009.

In May 2010, petitioner filed his federal habeas petition in this court.  Respondent filed an answer on November 3, 2010 and later that day filed an amended answer.  (See Dkt. Nos. 14 & 15.)  Petitioner filed a traverse in January 2011.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  See 28 U.S.C. 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted).  Under

3

the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

## V. ANALYSIS OF PETITIONER'S CLAIMS

### A. Claim I

In Claim I, petitioner asserts that "the trial court committed an abuse of discretion when it refused to dismiss one or both of petitioner's strikes[.]" (Pet'r's Pet. at p. 4.)  The California Court of Appeal denied this Claim as follows:

> Defendant contends the trial court abused its discretion by refusing to strike one or both of his prior strike convictions.  We disagree.
>
> Under section 1385, subdivision (a), a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. . . ." (§ 1385, subd. (a).)  In Romero, our Supreme Court held a trial court may utilize section 1385, subdivision (a) to strike or vacate a prior strike conviction for purposes of sentencing under the Three Strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (Romero, supra, 13 Cal.4th at p. 504.) Similarly, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (People v. Carmony (2004) 33 Cal.4th 367, 374 (Carmony).)
>
> In Carmony, our Supreme Court explained: "In reviewing for abuse of discretion, we are guided by two fundamental precepts.

4

First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.''" [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (Carmony, supra, 33 Cal.4th at pp. 376-377.)

The court went on to explain that "'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conlud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]" (Carmony, supra, 33 Cal.4th at p. 377.)

The court then cited People v. Williams (1998) 17 Cal.4th 148, 161 (Williams), for the proper standard for reviewing a decision to strike a prior conviction "in furtherance of justice" pursuant to section 1385: "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (Williams, supra, 17 Cal.4th at p. 161; Carmony, supra, 33 Cal.4th at p. 377.)

The Three Strikes law "creates a *strong presumption* that any sentence that conforms to these sentencing norms is both rational and proper." (Carmony, supra, 33 Cal.4th at p. 378, emphasis added.) This presumption will only be rebutted in an "extraordinary case – where the relevant factors described in Williams, supra, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ . . . ." (Carmony, supra, 33 Cal.4th at p. 378.)

In this case, we conclude the trial court did not abuse its discretion by declining to strike the prior convictions. Defendant's protestations notwithstanding, this is far from the "extraordinary case" described in Carmony.

5

I

*Nature and Circumstances of the Present Felony Conviction*

Defendant asserts, while "inexcusable and perhaps even reprehensible," his actions of driving while intoxicated, running a red light, and smashing into another vehicle causing injury to its passengers is relatively low on the list of "opprobrious acts that can cause one to incur criminal liability." This argument is misconceived. The question is not whether drunk driving causing injury is as opprobrious as premeditated murder, but whether the nature of this offense manifestly supports the striking of defendant's prior convictions such that no reasonable minds could differ. (Carmony, supra, 33 Cal.4th at p. 378.) Moreover, following the collision, rather than make sure his victims were alive and that an ambulance had been called, defendant fled on foot in an attempt to escape the consequences of his inexcusable and reprehensible actions.

II

*Nature and Circumstances of the Prior Strike Convictions*

In September of 1989, defendant was convicted of involuntary manslaughter and admitted he personally used a dangerous or deadly weapon during the commission of the offense. While involuntary manslaughter is not ordinarily a strike offense, the use of a dangerous or deadly weapon transforms "any felony" into a "serious felony" for purpose of the Three Strikes law. (§ 1192.7, subd. (c)(23); § 1170.12, subd. (b)(1).) A fight broke out at a party between one of defendant's friends, Rick Rossler, and two men, Stanley Choate and Darren Pedigo. Defendant came to Rossler's assistance and attempted to break up the fight. When Choate and Pedigo started to push defendant, he pulled a fixed-blade survival knife from his back pocket and told the men to leave. As defendant drew the knife, he accidentally stabbed his girlfriend, Dynita Thornton, in the arm while she also attempted to break up the fight. Defendant exclaimed: "Look, you made me stab my old lady." Defendant then stabbed Choate in the chest. According to defendant, he intended to stab him in the leg, but Choate came at him too fast. Defendant retreated to his apartment next door and called the police.

In 1991, defendant was convicted of assault with a deadly weapon. While the facts of this conviction are not disclosed in the record, we can surmise from the conviction itself that not long after defendant discovered first hand that the use of a deadly weapon can result in the death of a human being, he once again used a deadly weapon to assault an individual.

Defendant complains these prior strike convictions were remote in

time. However, as explained immediately below, defendant's criminal conduct did not end with these convictions. Accordingly, we cannot find remoteness of the strike convictions alone renders defendant outside the spirit of the Three Strikes law. Defendant also points out he pleaded to at least one of the priors, was accepted into a dependency treatment program, and with respect to the involuntary manslaughter conviction, believed he was acting in self-defense. However, none of these observations required the trial court to exercise its discretion in favor of striking one or both of defendant's strikes.

III

*Background, Character, and Prospect for the Future*

Eight years after his conviction for assault with a deadly weapon, defendant was again convicted of a felony, this time battery on a police officer causing injury. He was sentenced to three years in prison. Defendant has a fairly extensive misdemeanor record, including convictions for theft, battery against a cohabitant, and driving under the influence of drugs or alcohol. Defendant has parole violations on seven separate occasions, each time returning to prison to finish his term. For the past ten years, when not incarcerated, defendant has been employed as a welder/fabricator. It is difficult to fathom how these circumstances could render defendant outside the spirit of the Three Strikes law.

In sum, the relevant factors described in Williams, supra, 17 Cal.4th 148, manifestly demonstrate defendant is precisely the sort of career criminal the Legislature had in mind in enacting the Three Strikes law.

(Resp't's Am. Answer Ex. A at p. 3-9.)

Claim I is solely one that the sentencing court abused its discretion under state law in failing to strike a prior conviction. No federal claim is presented in Claim I. Therefore, it is not cognizable under § 2254 since federal habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Middleton, 768 F.2d at 1085; see also Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (stating that the determination of whether a prior conviction qualifies for a sentence enhancement under California law is not a cognizable federal claim). Furthermore, even assuming *arguendo* that petitioner did raise a federal Constitutional argument in Claim I, petitioner does not make a showing of fundamental unfairness. See Christian v. Rhode, 41 F.3d

7

461, 469 (9th Cir. 1993) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Accordingly, Claim I should be denied.

    B.  Claim II

In Claim II, petitioner argues that his sentence of twenty-seven years to life imprisonment constitutes cruel and unusual punishment in violation of the Eighth Amendment. Respondent asserts that this claim is unexhausted. In support of this argument, respondent states that while petitioner presented this claim in his petition for review to the California Supreme Court, he did not raise the issue in his briefs before the California Court of Appeal. Thus, according to respondent, the claim was not "fairly presented" to the California Supreme Court because the petition for review is a discretionary appeal. See Cal. Rules Court, Rule 8.500(b), (c).

A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Fields v. Washington, 401 F.3d 1018, 1020 (9th Cir. 2005). A review of the record indicates that while petitioner did raise his cruel and unusual punishment argument in his petition for review, he did not raise the issue to the California Court of Appeal. (Compare Resp't's Lodged Doc. 5 with Resp't's Lodged Doc. 2.) The fact that petitioner raised this issue for the first time in his petition for review does not make up for the fact that he failed to raise it in the Court of Appeal in this case. See Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004) ("Even before Baldwin, we held that to exhaust a habeas claim, a petitioner must properly raise it on every level of direct review."). Nevertheless, a claim that is not presented to the lower courts on direct review but is expressly addressed by the state's highest court is considered exhausted. See id. at 916 n. 18. However, in this case the California Supreme Court summarily denied the petition for review without explanation. Accordingly, petitioner did not "fairly present" his cruel and unusual punishment claim to the state's highest

8

1  court and therefore it is not exhausted.  See Casey, 386 F.3d at 918 ("Because we conclude that
2  Casey raised his federal constitutional claims for the first and only time to the state's highest
3  court on discretionary review, he did not fairly present them.") (footnote omitted).

4  Additionally, even putting aside the exhaustion issue, Claim II can be denied on
5  the merits.  A court can dismiss a claim on the merits even if it is unexhausted if it is determined
6  that the claim is not "colorable."  See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).  For
7  the following reasons, Claim II is not "colorable."

8  A criminal sentence that is not proportionate to the crime of conviction may
9  violate the Eighth Amendment to the United States Constitution.  Outside of the capital
10 punishment context, however, the Eighth Amendment "'forbids only extreme sentences that are
11 grossly disproportionate to the crime.'"  United States v. Bland, 961 F.2d 123, 129 (9th Cir.
12 1992) (quoting Harmelin v. Michigan, 501 U.S. 957, 1010 (1991) (Kennedy, J., concurring)).
13 The threshold for an inference of gross disproportionality is high.  So long as the sentence does
14 not exceed statutory maximums, it will not be considered cruel and unusual punishment under
15 the Eighth Amendment.  See United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998);
16 United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).  The Supreme Court has noted
17 that "[o]utside of the context of capital punishment, successful challenges to the proportionality
18 of particular sentences have been exceedingly rare."  Rummel v. Estelle, 445 U.S. 263, 272
19 (1980).

20 In assessing whether a sentence is "grossly disproportionate" in the non-capital
21 context, a reviewing court considers "objective factors" to the extent possible.  See Solem v.
22 Helm, 463 U.S. 277, 290 (1983).  "Foremost among such factors are the severity of the penalty
23 imposed and the gravity of the offense."  Taylor v. Lewis, 460 F.3d 1093, 1098 (9th Cir. 2006)
24 (footnote omitted).  Comparisons among offenses can be made in light of the harm caused or
25 threatened to the victim or society, the culpability of the offender and the absolute magnitude of
26 the crime.  See id.  Generally, courts have upheld recidivist prison sentences challenged as cruel

9

1  and unusual similar to or longer than petitioner's twenty-seven years to life sentence for offenses
2  equivalent or offenses with less severity than in this case.  See, e.g., Lockyer v. Andrade, 538
3  U.S. 63, 77 (2003) (denying habeas relief on Eighth Amendment disproportionality challenge to
4  Three Strikes sentence of two consecutive terms of twenty-five years to life imprisonment for
5  two counts of petty theft); see also Ewing v. California, 538 U.S. 11, 29-30 (2003) (sentence of
6  twenty-five years to life imprisonment on grand theft conviction involving theft of three golf
7  clubs was not grossly disproportionate and did not violate the Eighth Amendment); Taylor, 460
8  F.3d at 1101-02 (denying habeas relief on Eighth Amendment cruel and unusual punishment
9  argument where petitioner with prior offenses was sentenced to twenty-five years to life
10 imprisonment for possessing .036 grams of cocaine base); but see Solem, 463 U.S. at 303
11 (sentence of life imprisonment without the possibility of parole for seventh non-violent felony is
12 grossly disproportionate).

13         Petitioner was sentenced to twenty-seven years to life in prison for hit and run
14 causing injury and driving under the influence causing injury after a determination that petitioner
15 had previously suffered two prior serious felony convictions for involuntary manslaughter using a
16 dangerous or deadly weapon during the commission of the offense and assault with a deadly
17 weapon.  It is worth noting that petitioner's sentence is less than the defendant received in
18 Lockyer and similar to the sentences in Ewing and Taylor.  Furthermore, petitioner's sentence is
19 unlike that of Solem in that his sentence allows for the possibility of parole.  See Taylor, 460
20 F.3d at 1098 (eligibility for parole, albeit after twenty-five years, made the sentence under the
21 Three Strikes law "considerably less severe than the one invalidated in Solem").  Additionally,
22 petitioner's sentence of hit and run causing injury as well as driving under the influence causing
23 injury had the potential to and in fact did cause harm to other victims.  See id.  Also, petitioner's
24 triggering offenses of hit and run causing injury and driving under the influence causing injury
25 were at a minimum as serious if not more serious than Taylor's possession of .036 grams of
26 cocaine base, as well as the petty thefts in Lockyer and Ewing.  Finally, it is worth noting that

10

petitioner's prior convictions which led to him sustaining two strikes were both violent. See Taylor, 460 F.3d at 1100 ("[T]he presence of violence on a petitioner's record seems an extremely important focal point for proportionality review.").

Based on the foregoing and in light of the applicable case law, petitioner has failed to raise a "colorable" claim that his sentence of twenty-seven years to life imprisonment is grossly disproprotionate. Therefore, petitioner is not entitled to federal habeas relief on Claim II.

## VI. REQUEST FOR AN EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing on his petition in his traverse. A court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). In this case, an evidentiary hearing is not warranted for the reasons stated in supra Part V. Petitioner failed to demonstrate that he has a "colorable" claim for federal habeas relief. Moreover, it is worth noting that at least with respect to the analysis under Claim I, the Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. Cullen v. Pinholster, – U.S. –, 131 S.Ct. 1388, 1398, 1400 (2011). Thus, his request will be denied.

## VII. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's request for an evidentiary hearing is DENIED.

11

For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: July 27, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

7
moor1314.157